IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY**, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) **CIVIL ACTION NO. 14-110-CG-M** |
| **NALL'S NEWTON TIRE a/k/a NALL'S NEWTON TIRE SERVICE, INC.**, | ) ) ) ) ) |
| Defendant. | ) |

**ORDER**

This matter is before the court on the motion of Nationwide Mutual Insurance Company ("Nationwide") to strike (Doc. 68), opposition thereto filed by Nall's Newton Tire ("NNT") (Doc. 69), and Nationwide's reply (Doc. 70). For the reasons stated below, the court finds that Nationwide's motion to strike should be granted in part and denied in part.

**BACKGROUND**

This case arises from insurance claims made for damage resulting from a fire that occurred at NNT's premises on December 18, 2012. Nationwide asserts in its complaint that no coverage exists for NNT's claims under their policy of insurance. (Doc. 1). NNT's answer to the complaint asserts counterclaims for breach of contract and bad faith refusal to pay. (Doc. 9). Nationwide moved for summary

judgment as to both its declaratory judgment complaint and NNT's counterclaims. (Doc. 50). Nationwide asserts that the fire was the result of arson, that NNT had a motive for burning the building and that the evidence implicates NNT in the setting of the fire. (Doc. 52). As such, Nationwide contends fire coverage is excluded by the policy of insurance and that NNT's submission of the claim for the fire loss amounts to a misrepresentation that voids the policy. (Doc. 52). NNT contends that there is evidence to show that Nationwide intentionally or recklessly failed to properly investigate the plaintiff's claim or intentionally or recklessly failed to properly subject the claim to a cognitive evaluation or review. (Doc. 63, pp. 10-16). NNT also argues that even if Nationwide has presented a prima facie case of arson, Nationwide has not shown that it is entitled to summary judgment on the breach of contract claim. (Doc. 63, pp. 16-19). Additionally, NNT contends that its representations were not intended to deceive. (Doc. 63, pp. 19-20).

Upon receiving NNT's opposition to summary judgment, Nationwide filed the current motion to strike numerous items of evidence filed in support of NNT's opposition. (Doc. 68).

## DISCUSSION

Nationwide seeks to strike the following items of evidence offered by NNT in opposition to summary judgment: 1) affidavit of Freddie Webb, 2) affidavit and supplemental affidavit of James Jones, 3) expert reports of Brian Cash and A.K. Rosenhan, 4) Rosenhan's picture showing bank site line, 5) Cash's diagram of bank

site, 6) videotape and transcript of police interview of John Nall, 7) affidavit of Andy Renner, 8) excerpts from John Nall's EUO, 9) excerpts from Art Ramos' deposition, and 10) excerpts from A.K. Rosenhan's deposition.

**1. Affidavit of Freddie Webb (Doc. 62-1)**

Nationwide contends that Webb's affidavit should be stricken because it contains inadmissible hearsay and is not based on personal knowledge. Specifically, Nationwide objects to Webb's statement that he "was aware that [John Nall] was working on a project for Cemex along with working on his son's motorcycle" and that when Webb left, Mr. Nall "went back to work." Webb's affidavit states that it is based on his personal knowledge, but does not offer specific facts to indicate how Webb was aware of what John Nall was working on. Webb does not state that Nall worked during Webb's visit or otherwise indicate that he witnessed what Nall was working on. In fact the affidavit states that Mr. Nall had a beer in his hand when he got there and that Mr. Nall went back to work when he left. Such statements imply that Mr. Nall did not work on the reported projects during Webb's visit. If Webb became aware of the specific projects Nall was working on because of something Webb was told, such evidence would be hearsay as the only purpose for which it is being offered in this case is for the truth of the matter asserted. The Court therefore finds that the averment that he was aware of the projects Nall was working on fail to meet the requirements of Rule 56(c)(4) and should be stricken. See Ward v. First Federal Savings Bank, 173 F.3d 611, 617-18 (7th Cir. 1999) ("The Malkowski affidavit merely asserts that he is 'aware' of the alleged instruction by

Pavlic; it does not reveal the source of Malkowski's awareness-be it a written directive from Pavlic, a conversation with him, or merely water-cooler gossip. As such, the affidavit fails to establish that Malkowski has personal knowledge on the subject of Pavlic's purported instruction."); see also 3 Am.Jur.2d Affidavits § 8 ("An affidavit must set forth facts and show affirmatively how the affiant obtained personal knowledge of those facts."). However, the Court does not find it necessary to strike Webb's statement that Mr. Nall "went back to work and did not appear to be upset or angry" when Webb left. Although Webb does not specifically state that he saw Nall start back to work, the circumstances described clearly imply that Webb's knowledge is based on him witnessing Nall's actions and appearance. Accordingly, the Court finds the statement that Nall went back to work should not be stricken.

**2) Affidavit and Supplemental Affidavit of James Jones (Doc 62-2)**

Nationwide objects to Officer Jones's statement that when Mr. Nall told him that he thought the fire started upstairs, "he must have been talking about the area near the back." Nationwide argues that this conflicts with Jones's earlier official report that stated that John Nall told him that the fire started upstairs. Nationwide also asserts that because Jones is a lay witness he cannot offer his opinion as to what Nall was thinking. The Court does not find that Jones's report and affidavits conflict. In both, Jones states that Nall told him that the fire started upstairs. The affidavit simply explains why, based on Jones' observations of the premises when he arrived, the fire could not have started in the upstairs

apartment.  Jones explains that that he saw the open door to the apartment and looked into the back window of the apartment and saw no fire.  He then deduced that if the fire started upstairs, it must have started in the back, not in the apartment.  Although the statement is phrased as describing what Nall meant or thought, the Court considers it to be simply an explanation of the circumstances Jones observed.  The Court understands these are merely a witness's stated observations and will consider them in that light.  Obviously Officer Jones does not have first hand knowledge of what Mr. Nall meant or thought.

The Court also will not consider Jones's statements as providing expert testimony regarding the cause of the fire.  As stated above, the Court views his statements merely to be his observations of what portions appeared to be on fire at the time he viewed them.  Nationwide attempts to discredit Jones's observations by pointing out his visibility limitations from where he reports he viewed the fire.  However, the Court finds that Jones's statements should not be stricken.  Nationwide's arguments or questions regarding what Jones was capable of seeing are more appropriately raised at cross-examination.  Where facts are in dispute, the Court will not engage in a detailed factual determination at the summary judgment stage.

Nationwide also objects to Jones's averment that he knows that "the office desk was not on fire" because he does not state how he knew.  However, Jones states that he walked around the building and looked into the first story window and observed where the fire was.  Jones had personal knowledge of where the fire

was in the building and conversely where it was not.  His statements have not been shown to be contradictory and are consistent with his stated observations.  They are not due to be stricken.

**3) Expert Reports of Brian Cash & A.K. Rosenhan (Docs. 62-3, 62-13)**

Nationwide, citing Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721 ((6th Cir. 1994), contends that NNT cannot offer expert reports in opposition to summary judgment because they do not constitute "testimony" by an expert witness, but instead consist of opinions contained in documents prepared out of court.   However, this Court reads the cited statements in Engebretsen to hold that, at trial, inadmissible facts or data on which an expert relies are not admissible except to explain the basis of the expert's opinion and cannot be admitted for the truth of the mater asserted.  Expert reports are commonly offered at the summary judgment stage and have been found to be appropriate evidence for a court to consider.  See e.g. Johnson v. State Farm Fire & Cas. Co., 2013 WL 4607548, at *6 (S.D. Ala. Aug. 29, 2013), appeal dismissed (Nov. 15, 2013) ("Therefore, because, one (as stated above), the Johnsons already have had the opportunity to "cross-examine" Wehrman as to his report and, two, to the extent his report constitutes hearsay, Wehrman could testify to (and has already been deposed regarding) all relevant portions of his report from personal knowledge or, alternatively, use that report to refresh his recollection, the Court can rely fully on the substance of Wehrman's expert report in ruling on the pending motion for summary judgment." (citations omitted)).  At summary judgment, a district court may consider inadmissible

evidence "if the statement could be reduced to admissible evidence at trial or reduced to admissible form. Id. (citations omitted). Rule 56 allows a party to object to material that "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2) (emphasis added). It does not require that they be presented in admissible form at the summary judgment stage.

**4) Rosenhan's Picture Showing Bank Site Line (Doc. 62-4)**

Nationwide objects to the court's consideration of the picture on the basis that it has not been authenticated. However, as stated above, at summary judgment, a district court may consider inadmissible evidence if the statement could be reduced to admissible evidence at trial or reduced to admissible form. Id.; see also Zukowski v. Foss Maritime Co., 2013 WL 1966001, *4 (S.D. Ala. May 10, 2013) ("However, even in the face of an objection to reliance upon nonauthenticated records, there is authority to indicate that, at the summary judgment stage, the court may rely upon non-authenticated records where it finds that those records could be reduced to admissible evidence at trial." (citing Pritchard v. Southern Co. Serv., 92 F.3d 1130, 1135 (11th Cir.1996); McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir.1996), aff'd, 520 U.S. 781 (1997); and Coker v. Tampa Port Authority, 962 F.Supp. 1462, 1467 (M.D. Fla.1997)).

Moreover, the photograph was reportedly attached as an exhibit to Rosenhan's deposition and as part of his expert disclosure. NNT reports that it is offered as the basis of Rosenhan's opinion. Accordingly, the Court finds that the picture should not be stricken.

**5) Cash's Diagram of Bank Site (Doc. 62-5)**

Nationwide objects to NNT's submission of the diagram of Nationwide's expert on the basis that it is not authenticated. However, NNT asserts that it was produced by Cash at his deposition and shows Cash's knowledge at the time of his deposition. As such it is not offered for its accuracy, but to discredit the basis of Cash's opinion. The Court finds that the picture could be reduced to admissible evidence at trial and should not be stricken at the summary judgment stage.

**6) Videotape and Transcript of Police Interview (Doc. 62-8)**

Nationwide seeks to exclude the videotape and transcript of the police interview of John Nall because it contains unsworn testimony and the transcript has not been authenticated. However, the videotape was reportedly relied upon by Nationwide's expert, Cash, as the basis for his opinion. The videotape is not offered for the truth of the statements contained in the video but for the purpose of showing the basis, or lack there of, for Cash's opinion. As to the transcript's authenticity, the Court finds that the transcript could be reduced to admissible evidence at trial and should not be stricken at the summary judgment stage.

**7) Affidavit of Andy Renner (Doc. 62-9)**

Nationwide asserts that Renner's affidavit consists of pure speculation and contains inadmissible character evidence. Mr. Renner states that beginning in 2008 he was hired by NNT and John Nall to try to recover bad debts owed to NNT. In the course of his work he reviewed some of Mr. Nall's business practices and went onsite to the business. He reports that Mr. Nall needed help with the basic

8

bookkeeping and other areas of his business and they entered into a management agreement. Mr. Renner offers some details of the state of NNT's finances and the actions that were taken and business practices that were changed in an effort to manage NNT's finances. Renner reports that a review of NNT's tax records from 2009-2012 show a steady improvement. Renner also reports that on the day of the fire Mr. Nall was working on a job for Cemex and that he was working late to try and make money to pay for his children's Christmas. In the last paragraph of his affidavit Renner avers that based on his knowledge of the business and Mr. Nall's work ethic, he "saw" Mr. Nall working through the challenges. Renner states that NNT was coming out of a bad situation when the fire occurred. Specifically, Renner states the following:

> We had made arrangements and were catching up the sales taxes and scrap tire penalties. We were in the position of filing Nall's Newton Tire's taxes and then would be in a position for John Nall to file personal income taxes. I fully expected Nall's Newton Tire to recover completely and to become a profitable business. It was headed in the right direction.

(Doc. 62-9, p. 4).

The Court finds that most of the statements in Renner's affidavit are factual statements about things of which Mr. Renner has personal knowledge. Mr. Renner explains his involvement with NNT and that he had personal knowledge of NNT's finances because of his work with NNT and John Nall over the years. His knowledge of NNT's finances was not acquired for the current litigation but is based on his familiarity with NNT's records and business practices during the years that he worked with John Nall.

Nationwide objects to the fact that Renner refers to a management agreement without attaching a copy of the agreement to his affidavit. Nationwide cites Rule 56(e), stating that it requires that "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." However, this requirement was omitted in the 2010 amendments to Rule 56. Rule 56(c)(4) requires only that affidavits be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). Moreover, the management agreement is only mentioned to explain the general nature of Renner's involvement with NNT and the terms of the management agreement are not at issue.

Nationwide also objects to statements that Renner discovered that an employee that had acted as NNT's bookkeeper had written thousands of dollars in checks to pay personal bills and that Mr. Nall told him that a prior bookkeeper had also taken money from NNT. The Court agrees that what Mr. Nall told him regarding the prior bookkeeper should be stricken as hearsay to the extent it is offered for the truth of the matter asserted. However, the statements regarding Renner's discovery of personal payments by the other bookkeeper are based on Renner's personal knowledge.

Nationwide objects to Renner's statements regarding the day of the fire that Mr. Nall was working on a job for Cemex and that he was working late to try and make money to pay for his children's Christmas. Renner does not explain how he

10

would have personal knowledge of these facts.  As with similar averments made by Webb discussed above, Renner's explanation of his involvement with NNT and John Nall do not explain how Renner would have personal knowledge of what Nall was working on or how late Nall was working on the day of the fire.  If Renner became aware of these reported facts because of something he was told, such evidence would be hearsay as the only purpose for which it is being offered in this case is for the truth of the matter asserted.  The Court therefore finds that Renner's statement regarding what Nall was doing the day of the fire should be stricken.

Nationwide objects to the last paragraph of Renner's affidavit on the basis that it constitutes of character evidence.  The Court disagrees.  The last paragraph includes specific examples of how NNT and John Nall's financials were on track at the time of the fire.  While Renner states how he generally "expected" NNT to do in the future, the statement is not simply speculation.  Mr. Renner has worked with John Nall and NNT since 2008 and avers that NNT's financial circumstances had improved and were heading in the right direction.  He does not state that NNT would have succeeded, but that based on the financials and work history, of which he has personal knowledge, he expected NNT to become profitable.

**8) Excerpts from John Nall's EUO (Doc. 62-10)**

Nationwide objects to the use of statements in Mr. Nall's EUO wherein Nall responded to questions about what he thought caused the fire, based on his observations.  Mr. Nall expressly states that he is merely speculating.  The Court agrees that such statements cannot be used to prove what caused the fire.

11

However, the statements can be used to explain Mr. Nall's observations and understanding of the circumstances and events that occurred. The statements show that Mr. Nall did not admit to intentionally setting the fire.

**9) Excerpts from Art Ramos' Deposition (Doc. 62-11)**

Nationwide objects on the basis of hearsay to statements by Mr. Ramos that the Fire Marshal told him that he found three hot spots. However, the statements are not being offered for the truth of the matter asserted. The statements are not being offered to show the actual origin or cause of the fire, but as evidence that the Fire Marshal did not tell Nationwide's expert, Cash, that there was a hot spot in the upstairs apartment. While it is not clear that the cited testimony is evidence of what Cash *was* told, the Court finds the statements should not be excluded on the basis of hearsay.

**10) Excerpts from A.K. Rosenhan's Deposition (62-12)**

Nationwide objects to NNT's submission of only one page of the deposition testimony of A.K. Rosenhan because it offers only Rosenhan's conclusion that in his opinion the fire was accidental and began in the general area shown in the diagram on Plaintiff's Exhibit 4. Nationwide asserts that an expert must base his opinion upon sufficient facts or data in the record and that the one page deposition testimony fails to provide the requisite support. However, NNT has also offered Rosenhan's expert report, which includes the basis of his opinion. Additionally, Nationwide was free to cross-examine Rosenhan about the basis of his opinions at his deposition and to submit additional portions of Rosenhan's deposition for the

Court's consideration. Nationwide has not shown here that Rosenhan's opinion was not sufficiently supported.

## CONCLUSION

For the reasons stated above, the motion of Nationwide Mutual Insurance Company to strike (Doc. 68), is **GRANTED in part**, as follows:

1) The Court hereby **STRIKES** the following portion of the affidavit of Freddie Webb:

> I was aware that that he was working on a project for Cemex along with working on his son's motorcycle… (Doc. 62-1).

2) The Court hereby **STRIKES** the following portions of the affidavit of Andy Renner (Doc. 62-9):

> Mr. Nall reported to me that Sharon Day had also taken money from Nall's Newton Tire. (Doc. 62-9, p. 2).

> I am aware that on the day of the fire Mr. Nall was working on a specific job for Cemex. It was near Christmas and he was working extra and late to try and make money to pay for his children's Christmas. (Doc. 62-9, p. 4).

In all other respects, Nationwide's motion to strike is **DENIED**.

**DONE** and **ORDERED** this 11th day of August, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE