IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION NO. 14-110-CG-M ) |
| NALL'S NEWTON TIRE a/k/a NALL'S NEWTON TIRE SERVICE, INC., | ) ) ) ) |
| Defendant. | ) ) |

**ORDER**

This matter is before the Court on the motion of Nationwide Mutual Insurance Company ("Nationwide") for summary judgment (Doc. 50), the opposition filed by Nall's Newton Tire ("NNT") (Doc. 63), and Nationwide's replies (Docs. 65, 67). For the reasons stated below, the Court finds that summary judgment should be granted in favor of Nationwide as to NNT's bad faith claim, but finds that there is a genuine issue of material fact as to NNT's breach of contract claim and therefore, that the remaining portions of Nationwide's summary judgment motion should be denied.

BACKGROUND

This case arises from insurance claims made for damage resulting from a fire that occurred at NNT's premises on December 18, 2012. Nationwide asserts in its

complaint that no coverage exists for NNT's claims under their policy of insurance. (Doc. 1). NNT's answer to the complaint asserts counterclaims for breach of contract and bad faith refusal to pay. (Doc. 9). Nationwide moves for summary judgment as to both its declaratory judgment complaint and NNT's counterclaims. (Doc. 50). Nationwide asserts that the fire was the result of arson, that NNT had a motive for burning the building and that the evidence implicates NNT in the setting of the fire. (Doc. 52). As such, Nationwide contends fire coverage is excluded by the policy of insurance and that NNT's submission of the claim for the fire loss amounts to a misrepresentation that voids the policy. (Doc. 52). NNT denies that the fire is the result of arson and contends that there is evidence to show that Nationwide intentionally or recklessly failed to properly investigate NNT's claim or intentionally or recklessly failed to properly subject the claim to a cognitive evaluation or review. (Doc. 63, pp. 10-16). NNT also argues that even if Nationwide has presented a prima facie case of arson, Nationwide has not shown that it is entitled to summary judgment on the breach of contract claim. (Doc. 63, pp. 16-19). Additionally, NNT contends that its representations were not intended to deceive. (Doc. 63, pp. 19-20).

## DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's

function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before a court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, a court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies its initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Motions for Summary Judgment**

Nationwide moves for summary judgment as to both its declaratory judgment complaint and NNT's counterclaims for breach of contract and bad faith. (Doc. 50). Since the declaratory judgment complaint seeks a declaration that the insurance policy issued by Nationwide does not provide coverage for NNT's fire claim, a determination of NNT's counterclaims will also determine whether Nationwide is entitled to summary judgment on its complaint.

**1. Breach of Contract**

The elements for a breach of contract claim are: "(1) the existence of a valid contract binding the parties in the action, (2) [plaintiff's] own performance under that contract, (3) the defendant's nonperformance, and (4) damages." Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995) (citations omitted). There is no dispute that a valid contract existed, that NNT made the required policy payments under that contract and that NNT sustained damages. The issues are whether Nationwide's denial of the claim constitutes nonperformance and whether NNT's submission of the claim constituted a misrepresentation that voids the policy.

Nationwide claims it performed under the contract because NNT's insurance claim was excluded by the policy. Specifically, Nationwide asserts that John Nall intentionally set the fire and that the policy expressly excludes losses caused by dishonest or criminal acts by the insured and any loss arising out of an act committed by or at the direction of the insured with the intent to cause a loss.

5

While the insurer bears the burden of demonstrating that these exclusions apply, Acceptance Ins. Co. v. Brown, 832 So.2d 1, 12 (Ala. 2001) (citing Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co., 293 Ala. 719, 310 So.2d 200, 202 (1975)), there appears to be no dispute that if John Nall intentionally set the fire, the policy exclusions apply. Thus, the issue before the Court is whether there is a genuine issue of material fact regarding whether John Nall intentionally set the building on fire. The Court finds that viewing the evidence in the light most favorable to NNT, as the non-moving party, there is a sufficient disagreement to require submission to a jury.

Although Nationwide has experts that opine that the fire was intentionally set and there is no dispute that John Nall was at the scene of the fire when it began, there is also evidence that the fire was accidental. John Nall testified to the circumstances under which the fire began and has maintained that the fire was accidental. (Doc. 66, pp. 59-68, Doc. 62-8). NNT's expert, A.K. Rosenhan, opined that the fire was accidental. (Doc. 62-12 p. 2). Rosenhan found that the fire started at one place of origin, near the southeastern corner of the building, which is consistent with Mr. Nall's description of what occurred. (Doc. 62-13, p. 5, 6-7). Rosenhan also opined that the reports of Nationwide's experts contain numerous defects, omissions and erroneous conclusions. (Doc. 62-13, pp. 5-6, 7). The account of the first responding officer to the scene of the fire, James Jones, is also consistent with John Nall's account and Rosenhan's conclusion as to where the fire originated. (Doc. 62-2). In light of the above evidence, the Court finds that Nationwide has not

6

met its burden of showing that no genuine issue of material fact exists with regard to NNT's breach of contract claim.

### 2. Bad Faith

NNT's counterclaim asserts that Nationwide has failed to pay NNT's claim without any legitimate or arguable reason for denying the claim and has intentionally failed to determine whether there was a lawful basis for its refusal by failing to investigate or subject its findings to a reasonable interpretation. (Doc. 9, pp. 4-5). The tort of bad-faith refusal to pay a claim requires evidence to support the following elements:

> (a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."

EMCASCO Ins. Co. v. Knight, 2014 WL 5020044, *15 (N.D. Ala. Oct. 7, 2014) (quoting National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982)). "The plaintiff asserting a bad-faith claim bears a heavy burden." Shelter Mut. Ins. Co. v. Barton, 822 So.2d 1149, 1154 (Ala. 2001) (citing LeFevre v. Westberry, 590 So.2d 154, 159 (Ala. 1991)). "[A] finding of bad faith based upon rejection of an insurer's legal argument should be reserved for extreme cases." Id. (quoting Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1226 (Ala. 1983) (Jones, J., concurring specially)). "The right of an insurer to deny a claim on any arguable legal issue is to

7

be as zealously guarded as is its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same." Id. (quoting Safeco supra).  "To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable." Liberty Nat. Life Ins. Co. v. Allen, 699 So.2d 138, 143 (Ala. 1997).  "No matter how badly the insurer acted in investigating and evaluating the claim, if there was a debatable reason for refusing to pay the claim, when payment was refused, the insured was not entitled to prompt payment." State Farm Fire & Cas. Co. v. Balmer, 672 F.Supp. 1395, 1406 (M.D. Ala. 1987) (italics and citation omitted).  "[P]roof of mere negligence or mistake is not sufficient to support a claim of bad faith; there must be a refusal to pay, coupled with a conscious intent to injure." Peachtree Cas. Ins. Co., Inc. v. Sharpton, 2001 WL 286919, *5 (M.D. Ala. March 20, 2001) (citation omitted).

"Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the [insurance] claim and, thus, the legitimacy of the denial thereof, the [bad faith] tort claim must fail and should not be submitted to the jury." Nat. Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala.1982).  To make out a prima facie case of bad faith refusal to pay, the insured must generally show that he is entitled to a directed verdict on the contract claim. Id.  NNT has not moved for summary judgment on its breach of contract claim and has not suggested here that it is entitled to judgment as a matter of law on its breach of contract claim.  Since NNT has not shown that the facts demonstrate, as a matter of law, that Nationwide

8

breached the contract of insurance, it cannot maintain a claim of bad faith refusal to pay.

Moreover, Nationwide contends that it had an arguable reason for denying the claim and that it did not intentionally fail to determine whether there was a legitimate or arguable reason. Nationwide submitted evidence to support a finding that the fire was the result of arson.

> To establish an arson defense under Alabama law, an insurer must " 'prove by competent and relevant evidence arson by someone, motive by the plaintiff and unexplained surrounding circumstantial evidence implicating the plaintiff.' " Mueller v. Hartford Insurance Co., 475 So.2d 554, 557 (Ala.1985) (quoting Great Southwest Fire Insurance Co. v. Stone, 402 So.2d 899, 900 (Ala.1981)). The insurer's burden of proof is not particularly heavy. Proof may be made by circumstantial evidence "if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence." Id. Proof beyond a reasonable doubt, or proof by direct evidence, is not required.

Fondren v. Allstate Ins. Co., 790 F.2d 1533, 1535 (11th Cir. 1986). There have clearly been sufficient facts presented for a jury to find that the above standard has been met.

Nationwide submitted testimony from experts who investigated the fire and found it to be incendiary in nature. Fire Marshal Jeb Harrison found that the fire was incendiary. (Doc. 54-4, p. 3). An independent fire origin and cause expert, Bryan Cash, found that the fire was not accidental, but was instead incendiary with two points of origin. (Doc. 54-3, pp. 3-4, 7-8, 11).

Nationwide also submitted evidence showing that NNT was experiencing significant financial difficulties. NNT had at least three outstanding loans and

NNT was behind on its payment of the loans. (Doc. 54-5).  NNT's had very little money in its bank accounts and at times the accounts had negative balances during the months leading up to the fire. (Doc. 55-1).  NNT was also behind in paying one of its suppliers, Robertson Tire, who has a judgment against NNT. (Doc. 54-1, pp. 18-22).  There were also tax liens totaling $103,330.83 pending against NNT at the time of the fire. (Doc.56-3).

There is evidence that implicates John Nall in that he was at the scene of the fire when it began and his account is not consistent with the findings of Nationwide's experts.  John Nall had the opportunity to set the fire, as he was the only person in the building when it started. (Doc. 54-1, p. 24).  Nationwide's expert, Cash, eliminated all possible accidental causes, including the possibility that it could have been caused by the torch or welding equipment that John Nall had reported he had been using prior to the fire. (Doc. 54-3, p. 10).  As stated above, Cash found that the fire had two points of origin, which is inconsistent with any accidental cause that has been suggested.

Moreover, John Nall has been indicted for intentionally setting the fire.  Courts have held that the fact that an insured had been indicted for arson can be strong evidence that the insurance company had a reasonable justification for denial. See e.g. Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 422 (6th Cir. 2000) ("If an insured is indicted before an insurance company refuses to honor its policy, by contrast, then an indictment on arson charges certainly would be strong evidence that shows that the insurance company had a reasonable justification for

the denial of a fire insurance claim, assuming that the insurance company knew about the indictment at the time it refused to honor the claim.").

NNT contends that Nationwide failed to determine whether there was a lawful basis for its refusal. However, Nationwide clearly investigated the claim including hiring an expert to determine the cause and origin of the fire. This Court has already denied NNT's Daubert motion to exclude the testimony of Nationwide's experts. As previously explained, even if the investigation was lacking, if there is a debatable reason for refusing to pay the claim, the insured cannot be held liable for bad faith. Balmer, 672 F.Supp. at 1406. "[P]roof of mere negligence or mistake is not sufficient to support a claim of bad faith; there must be a refusal to pay, coupled with a conscious intent to injure." Sharpton, 2001 WL 286919 at *5 (citation omitted). Where there was an arguable reason to deny the claim, "[t]he insurer's "subpar" investigation cannot in and of itself sustain a tort action for bad faith." Balmer, 672 F.Supp. at 1405.

In light of all of the above, the Court finds that Nationwide clearly had an arguable reason to deny NNT's claim. Accordingly, Nationwide is entitled to summary judgment on NNT's bad faith claim.

## CONCLUSION

For the reasons stated above, the motion of Nationwide Mutual Insurance Company for summary judgment (Doc. 50), is **GRANTED in part** to the extent that summary judgment is hereby granted in favor of Nationwide on NNT's

counterclaim for bad faith.  Nationwide's motion for summary judgment is **DENIED** as to Nationwide's declaratory complaint and NNT's counterclaim for breach of contract.

    **DONE** and **ORDERED** this 13th day of August, 2015.

                                              /s/  Callie V. S. Granade  
                                              UNITED STATES DISTRICT JUDGE