IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY**, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 14-110-CG-M ) |
| **NALL'S NEWTON TIRE** a/k/a **NALL'S NEWTON TIRE SERVICE, INC.**, | ) ) ) ) ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the motion of Nationwide Mutual Insurance Company ("Nationwide") for new trial or, alternatively for remittitur (Doc. 128), opposition thereto by Nall's Newton Tire ("NNT") (Doc. 129), NNT's motion to tax costs and prejudgment interest (Doc. 130), Nationwide's opposition to NNT's motion to tax costs and prejudgment interest (Doc. 134), Nationwide's reply in support of new trial or remittitur (Doc. 135), Nationwide's motion for reconsideration of order granting NNT leave to file surreply (Doc. 138), NNT's reply in support of prejudgment interest (Doc. 139), and NNT's surreply in opposition to new trial or remittitur (Doc. 140). As an initial matter, the Court declines to reconsider the granting of NNT's leave to file a surreply. The Court has already ruled on the motion and reviewed NNT's "surreply" and will not reexamine that decision here. As to Nationwide's motion for new trial or remittitur, for reasons

that will be explained below, the Court finds that Nationwide's motion for remittitur should be granted to the extent that the damage award will be reduced to $318,500.00. Lastly, the Court finds below that NNT's motion for prejudgment interest should be granted and that costs should be taxed in the amount of $5,344.67.

## BACKGROUND

This case arises from insurance claims made for damage resulting from a fire that occurred at NNT's premises on December 18, 2012. Nationwide filed the action seeking a declaratory judgment that no coverage exists for NNT's claims under their policy of insurance. (Doc. 1). NNT asserted counterclaims for breach of contract and bad faith refusal to pay. (Doc. 9). The Court granted summary judgment in favor of Nationwide as to NNT's bad faith claim (Doc. 91) and the case proceeded to trial on Nationwide's declaratory judgment claim and NNT's claim for breach of contract.

The parties' joint pretrial document stated that NNT "will be seeking all contractual damages which it is entitled to: $168,500 appraised value or $225,015 replaced value for the loss of the building and $150,000 for loss of contents." (Doc. 85, p. 51). Nationwide moved to prohibit the admission of evidence relating to the replacement value of the property because the insurance policy excluded such coverage until the damaged property "is actually repaired or replaced" and "[u]nless the repairs or replacement are made as soon as possible after the loss or damage."

(Doc. 96). That motion was granted by the Court. (Doc. 127). There was evidence at trial that the policy limits for the building at the time of the accident were $405,000 for the building and $150,000 for the contents. (Doc. 129-2, p. 5). There was also testimony that the policy limits of $405,000 could only be collected if the property was rebuilt. (Doc. 129-2, p. 8). The testimony also indicated that Mr. Nall had claimed the actual cash value, of $168,500 for the building, not replacement cost. (Doc. 129-2, p. 8).

>The jury instructions regarding damages included the following:

> If you decide that Nall's Newton proved its claim against Nationwide for breach of contract, and that Nationwide's defenses fail, then you must decide how much money will reasonably compensate Nall's Newton for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Nall's Newton in as good a position as it would have been if Nationwide had not broken the contract. Nall's Newon is claiming $168,500.00 for the building and $150,000.00 for the contents, for a total damages award of $318,500.00.

The jurors were also advised that their "verdict must not be based on mere speculation or conjecture but must be based upon the evidence and the just and reasonable inferences shown thereby." The verdict form provided a blank line on which the jurors were to write the amount of damages awarded if they found in favor of NNT as to its breach of contract claim. (Doc. 126). Neither party objected to the verdict form or the above described jury charges. The jury returned a verdict in favor of NNT as to its breach of contract claim and awarded damages in the amount of $510,000.00. (Doc. 126).

## DISCUSSION

**A. New Trial or Remittitur**

A district court which finds that a jury's award of damages is excessive may grant the defendant a new trial on this basis. Peer v. Lewis, 2008 WL 2047978, *17 (S.D. Fla. May 13, 2008) aff'd, 2009 WL 323104 (11th Cir. Feb. 10, 2009) (citing Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1329 (11th Cir. 1999)). Alternatively, "the court can order remittitur and reduce the damages." Id. (citing Simon v. Shearson Lehman Bros., Inc., 895 F.2d 1304, 1310 (11th Cir. 1990); Wilson v. Taylor, 733 F.2d 1539, 1549-50 (11th Cir. 1984)). A court has discretion to issue a remittitur if the "jury's award is unreasonable on the facts." Johansen, 170 F.3d at 1331.[1] However, the Seventh Amendment requires that a plaintiff be given the option of a new trial in lieu of a court's discretionary remittitur of a portion of the

---

[1] "Once a defendant is found liable for the plaintiff's injury, the district court has a great deal of discretion in deciding the level of damages to be awarded." Ferrill v. Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999) (citing Stallworth v. Shuler, 777 F.2d 1431, 1435 (11th Cir. 1985)); see also Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1447–48 (11th Cir.), cert. denied, 474 U.S. 1005 (1985) (reviewing trial court decision as to whether jury compensatory damages award was excessive for "clear abuse of discretion"); Agro Air Associates., Inc. v. Houston Casualty Co., 128 F.3d 1452, 1455 n. 5 (11th Cir. 1997)(reviewing denial of motion for remittitur or new trial on ground of excessive damages under abuse of discretion standard). However, courts should be "particularly deferential to the fact finder's determination of compensatory damage awards for intangible, emotional harms because the harm is so 'subjective and evaluating it depends considerably on the demeanor of the witnesses.' " Griffin v. City of Opa-Locka, 261 F.3d 1295, 1315 (11th Cir. 2001) (quoting Ferrill v. Parker Grp., Inc., 168 F.3d 468, 476 (11th Cir. 1999)).

jury's award. Id. at 1329.  In contrast, "where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount." Id. at 1330 (citation omitted).  "The Seventh Amendment is not offended by this reduction because the issue is one of law and not fact." Id.  A jury award may be unconstitutionally excessive, for instance "the Constitution provides an upper limit on punitive damage awards so that a person has 'fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose.' " Id. at 1330-1331 (citation omitted).  "[A] court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause." Id. at 1330.  The court should also correct a verdict that goes beyond the damage evidence presented at trial.  "In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." Sands v. Kawasaki Motors Corp. U.S.A., 513 Fed. Appx. 847, 855 (11th Cir. 2013) (quoting Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir.1985)).  Where there is only one basis for liability alleged, then the trial court may base a remittitur order on the maximum amount proved, without providing the opportunity for a new trial. Goldstein, 758 F.2d at 1448.

In the instant case, the only damage claim allowed at trial was NNT's counterclaim for breach of contract.[2] The evidence at trial established that NNT had submitted a claim to Nationwide for the actual cash value of the building in the amount of $168,500.00 plus $150,000.00 for the contents of the building, for a total claim of $318,500.00.  Although there was evidence that the limits of the policy exceeded this amount, there was no evidence that NNT had claimed additional sums or that it was entitled to additional sums under the insurance contract.  Uncontradicted evidence established that NNT had not rebuilt the property and was not entitled under the insurance policy to replacement costs.  There was no evidence that NNT was entitled to anything more under the policy than the $318,500.00 it had claimed.  The jurors were even instructed by the court that NNT was claiming $168,500.00 for the building and $150,000.00 for the contents, for a total damages award of $318,500.00.

The Court can only speculate as to how the jury arrived at a damage award in the amount of $510,000.00.  Perhaps the jurors thought it appropriate to award damages for intangible, emotional harms, due to Nationwide's failure to pay NNT's claim.  However, because NNT's claim for bad faith failure to pay had been dismissed by the court as a matter of law, there were no claims for emotional harms before the jury.  After reviewing the evidence and the claims before the jury, the Court finds that an award of $510,000.00 unquestionably exceeds the amount

---

[2] Nationwide only asserted declaratory claims that essentially sought a determination that NNT's breach of contract claim failed.

6

established by the evidence. There is only one basis for liability and the maximum amount of damages proved at trial was $318,500.00.

**B. Prejudgment Interest**

After reviewing the facts and circumstances of this case, the Court finds it appropriate to award prejudgment interest to NNT. It is well established under Alabama law that prejudgment interest may be available in the breach of contract context where, as here, damages were reasonably certain at the time of breach. See Goolesby v. Koch Farms, LLC, 955 So.2d 422, 429 (Ala. 2006) ("Prejudgment interest may be available in a breach-of-contract case, ... but only if damages were reasonably certain at the time of the breach.") (citations omitted). Prejudgment interest serves to return the injured party to the position it would have been in had the contract been fully performed.[3] See City of Milwaukee v. Cement Div., Nat. Gypsum Co., 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."); Systrends, Inc. v. Group, 8760, LLC, 959 So.2d 1052, 1075 (Ala. 2006) ("Damages for breach of contract should return the injured party to the position he would have been in had the contract been fully performed.") (citations and internal

---

[3] In fact, it is possible the jury's award above the amount of NNT's claim was an attempt to compensate NNT for the loss of interest or use of the money for an extended period of time. However, the jury was not instructed on interest damages and did not hear any evidence or analysis concerning such damages. The Court is not at liberty to speculate whether, or to what extent, the jury intended for any part of its award to represent interest damages, See City Realty, Inc. v. Continental Cas. Co., 623 So.2d 1039 (Ala. 1993) (finding it improper for the Court to speculate and apportion a jury award into compensatory and punitive damages).

quotation marks omitted). Once it was established that NNT was entitled to damages, Alabama law provides that NNT is entitled to prejudgment interest at the statutory rate of 6% per annum. See Maddox v. Alfa Mut. Ins. Co., 577 So. 2d 457, 458 (Ala. 1991) ("The only disputed issue at the trial was the amount of damages, if any, to which the insured was entitled. Once that was established, Ala.Code 1975, § 8–8–8, provided for prejudgment interest on that amount."); see also Rhoden v. Miller, 495 So.2d 54, 58 (Ala. 1986) ("Where no written contract controls the interest rate ..., the legal rate of pre-judgment interest is six percent per annum."); Edwards v. Vanzant, 492 So.2d 990, 994 (Ala. 1986) (recovery for conversion claim should include "interest at the rate of six per cent (6%) per annum from the date of the conversion").

Nationwide contends that NNT cannot collect prejudgment interest because it was not specifically plead or included in NNT's calculation of damages in its pretrial order. However, NNT was not required to present its claim for prejudgment interest to the jury. Once damages were determined, the Court may make the mathematical calculation to determine the interest to be awarded. See Maddox, 577 So. 2d at 459 ("A party should not be required to seek a jury instruction on prejudgment interest to be entitled to it. Once his damages are fixed, the trial judge or the clerk should make the mathematical calculation necessary to determine the interest to which the statute entitled him."); Meaux Surface Prot., Inc. v. Fogleman, 607 F.3d 161, 172 (5th Cir. 2010) ("in diversity cases, it is not necessary for the plaintiff's pleadings to contain a prayer or other request for pre-

8

judgment interest… If state substantive law provides for the recovery of interest, Federal Rule of Civil Procedure 54(c) requires that such be included where appropriate.") (citing Consol. Cigar Co. v. Tex. Commerce Bank, 749 F.2d 1169, 1174 (5th Cir.1985)). "[W]hen prejudgment interest is authorized under the substantive law, Rule 54(c) permits a court to award it where it has not been demanded in the pleadings. J.A. McDonald, Inc. v. Waste Sys. Int'l Moretown Landfill, Inc., 247 F. Supp. 2d 542, 546 (D. Vt. 2002) (citing O'Hare v. Gen. Marine Transp. Corp., 740 F.2d 160, 171 (2d Cir.1984); Newburger, Loeb & Co. v. Gross, 611 F.2d 423, 432–33 (2d Cir.1979); and FED. R. CIV. P. 54(c)).

    The parties dispute the date from which prejudgment interest should be calculated. Alabama law provides that prejudgment interest on a contract for the performance of any act or duty accrues from the day the act should have been performed. See ALA.CODE § 8-8-8; see also Miller and Co. v. McCown, 531 So.2d 888, 889 (Ala. 1988) ("in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest from that time until recovery") (citations omitted). In other words, prejudgment interest accrues from the date of breach. Nationwide argues that prejudgment interest is improper because the jury did not determine when the breach occurred and evidence regarding when NNT submitted a proof of claim or when payment was due under the contract was not even offered at trial. However, the date NNT submitted its proof of claim and the language contained in the policy can be determined from pleadings and papers on file in this case. See

Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams, 530 So., 2d 1371, 1376 (Ala. 1988) ("every judgment of a court of law must either be perfect in itself or capable of being made perfect by reference to the pleadings, or to the papers on file in the cause, or else to other pertinent entries on the court docket; and in like manner verdicts of juries cannot be supplemented by intendment or by reference to mere extrinsic facts.") (quoting Merchants' Bank & Trust Co. v. J.A. Elliot & Son, 16 Ala.App. 620, 80 So. 624 (1918)).  A copy of NNT's proof of loss, dated July 11th 2013, was filed with the court and Nationwide stated in its motion for summary judgment that NNT's proof of loss was submitted to Nationwide on July 16, 2013. (Doc. 54-2; Doc. 51, p. 2, ¶ 3).  The proof of loss included a copy of an appraisal on the property. (Doc. 54-2, pp. 13-96).  Under the subheading "Loss Payment," the policy provides that Nationwide "will give notice of our intentions within 30 days after we receive the sworn proof of loss…" and "will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all the terms of this policy; and (1) We have reached agreement with you on the amount of loss; or (2) An appraisal award has been made." (Doc. 9-1, p. 39, ¶ E(5)(c), p. 41, ¶ E(5)(h)).  The jury's verdict establishes that NNT had complied with the policy and that Nationwide breached the policy.  This Court determined that NNT was entitled to the cash value of the building.  The cash value of the building and the amount recoverable for the contents of the building is not in dispute.  There is no evidence Nationwide ever disputed that *if* the loss was covered, NNT was entitled to $168,500.00 for the cash value of the building and $150,000.00 for the

contents of the building for a total recovery of $318,500.00. There was no evidence that the cash value of the building was not $168,500.00. While there was some dispute over whether the policy covered the cash value or replacement value of the property, that issue did not require a factual determination of those amounts. Nationwide did not dispute the amount of the loss, but merely the legal implications of the policy language. If the policy covered the loss and did not cover replacement value then NNT was entitled to be paid $318,500.00. The jury's finding of coverage together with the Court's legal conclusions concerning the scope of the policy establish that an amount that is certain was due to be paid. As such, the Court finds that the policy required Nationwide to inform NNT of its intentions and to pay for the covered loss within 30 days from the date Nationwide received the proof of loss. Accordingly, NNT is entitled to 6% prejudgment interest from August 15, 2013 through the date of judgment.

**C. Costs**

"In the exercise of sound discretion, trial courts are accorded great latitude in ascertaining taxable costs." Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1526 (11th Cir. 1985) (citing United States v. Kolesar, 313 F.2d 835 (5th Cir. 1963)). However, in exercising its discretion to tax costs, absent explicit statutory authorization, federal courts are limited to those costs specifically enumerated in 28 U.S.C. § 1920. Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 445 (1987). The word "costs" is not synonymous with "expense." Eagle Insurance Co. v. Johnson, 982 F.Supp. 1456, 1458 (M.D. Ala. 1997). "[E]xpense includes all the

11

expenditures actually made by a litigant in connection with the lawsuit." Id. (citations omitted). "Whereas the costs that the district court may award under Rule 54(d)(1) are listed in 28 U.S.C.A. § 1920, a district court may not award other costs or exceed the amounts provided in § 1920 without explicit authorization in another statutory provision." Id. (citations omitted). Thus, the costs will almost always be less than the total expenses associated with the litigation. Id. (citations omitted).

The court's power to tax costs is grounded in part in Rule 54(d)(1) of the Federal Rules of Civil Procedure, which states: "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Rule 54(d) gives rise to a presumption that costs will be awarded, and the party opposing the award must overcome this presumption. Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 639 (11th Cir. 1991); see also Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of New York, 2009 WL 2150903, at *3 (S.D. Ala. July 13, 2009) ("The burden falls on the losing party to show that specific deposition costs or a particular court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition.") (citations omitted); Monelus v. Tocodrian, Inc., 609 F.Supp.2d 1328, 1333 (S.D. Fla. 2009) ("When challenging whether costs are taxable, the losing party bears the burden of demonstrating that a cost is not taxable[.]").

Section 1920 of Title 28 authorizes a judge or clerk of court to tax six items as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A court may not award costs that exceed those permitted by § 1920. See Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1575 (11th Cir. 1988).

NNT submitted a bill of costs totaling $5,743.27. (Doc. 130-1). Nationwide contends that the costs should be reduced to $4,720.57 and objects to (1) witness fees for Tim Soronen in the amount of $194.10, (2) certain court reporter and deposition fees totaling $712.70, and (3) postage fees in the amount of $115.90.

**1. Witness Fees for Tim Soronen**

NNT listed Tim Soronen as a witness it intended to call at trial and subpoenaed Mr. Soronen to attend. (Doc. 85-5, p. 3; Doc. 130-1, pp. 36-37). Mr. Soronen is listed as an employee of the Demopolis Police Department. NNT included costs for attendance and mileage for Mr. Soronen. Nationwide objects to these costs because Mr. Soronen did not testify at trial. "However, witness fee

13

statutes are appropriate not only for witnesses who testify, but for all witnesses who 'have been summoned and are ... available to testify.' " Barrera v. Weiss & Woolrich S., 900 F. Supp. 2d 1328, 1333 (S.D. Fla. 2012) (quoting Hurtado v. United States, 410 U.S. 578, 584–5, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973)); see also Spanish Action Comm. of Chicago v. City of Chicago, 811 F.2d 1129, 1138 (7th Cir. 1987) (holding that witness fees for witnesses who were subpoenaed to testify at trial but were never called are recoverable because the witness fees compensated the witnesses for their availability and readiness to testify rather than actual testimony). Fees for witnesses who were subpoenaed but did not testify are generally recoverable unless their testimony "was immaterial, or that the number subpoenaed who did not testify was unduly excessive, or that the time they spent in attendance and the fees claimed for them were manifestly unreasonable." United States v. Lynd, 334 F.2d 13, 16-17 (5th Cir. 1964).[4] Nationwide contests the witness fees solely on the basis of the fact that the witness was not called at trial, not on the reasonableness of subpoenaing the witnesses and making him available to testify. Mr. Soronen was listed as a witness for trial and is presumed necessary since there is no evidence to the contrary. Accordingly, the Court finds that the witness fees for Mr. Soronen are recoverable.

---

[4] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**2. Court Reporter and Deposition Fees**

Nationwide objects to the inclusion of deposition costs for the deposition of its own expert, and for all deposition costs listed for condensed copies, "depo drive," and costs for delivery by courier. Section 1920(2) authorizes the award of costs for deposition transcripts. 28 U.S.C. § 1920(2); see United States v. Kolesar, 313 F.2d 835, 837–38 (5th Cir. 1963) ("Though 1920(2) does not specifically mention a deposition, ... depositions are included by implication in the phrase 'stenographic transcript.' "). Whether the costs for a deposition are taxable depends on "whether the deposition was wholly or partially 'necessarily obtained for use in the case.'" Id. at 621 (quoting Newman v. A.E. Staley Mfg. Co., 648 F.2d 330, 337 (5th Cir. Unit B 1981)). "[D]eposition costs are taxable even if a prevailing party's use of a deposition is minimal or not critical to that party's ultimate success." Ferguson v. Bombardier Serv. Corp., 2007 WL 601921, *3 (M.D. Fla. Feb. 21, 2007). However, "[w]here the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." E.E.O.C. v. W & O, Inc., 213 F.3d 600, 620 (11th Cir. 2000) (quoting Goodwall Const. Co. v. Beers Const. Co., 824 F.Supp. 1044, 1066 (N.D. Ga.1992), *aff'd*, 991 F.2d 751 (Fed. Cir. 1993)).

Nationwide contends that NNT should not recover the cost of obtaining a transcript of the deposition of their expert, A.K. Rosenhan, because his opinions could have been presented to the Court via affidavit and that because it was only needed by Nationwide to insure that it understood the opinions. (Doc. 134, p. 6). The

15

Court disagrees.  NNT states that Rosenhan's testimony was needed to rebut the arson allegations originally made by Nationwide. (Doc. 130-p. 2).  A portion of Rosenhan's deposition testimony was submitted at the summary judgment stage and his opinions were considered by the Court in ruling on Nationwide's motion for summary judgment.  Mr. Rosenhan also testified at trial.  Clearly understanding Rosenhan's opinions and knowing exactly what Rosenhan had testified to at his deposition was necessary and important for NNT's case.  The mere "possibility" of impeachment of NNT's witness by the deposition made it reasonably necessary for NNT's counsel to obtain a copy. Preis v. Lexington Ins. Co., 2007 WL 3120268 at *2 (S.D. Ala. Oct. 22, 2007).  Accordingly, the Court finds it appropriate to allow NNT to recover the cost of obtaining a copy of Rosenhan's deposition testimony.

   As to the costs listed for condensed copies, "depo drive," and courier, the Court finds such costs are not recoverable.  Any portion of the cost of a deposition that was incurred "for the convenience of the attorney" rather than being "necessarily obtained for use in the case" is not properly taxable. Newman v. A.E. Staley Manufacturing Co., 648 F.2d 330, 337 (5th Cir. 1981).   "The concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Cherry v. Champion International Corp., 186 F.3d 442, 449 (4th Cir.1999)  (upholding trial court's refusal to allow both videotape and stenographic transcript as costs). Defendants generally cannot charge for both ordinary transcripts and condensed transcripts or other duplicate forms of a transcript. Preis v. Lexington Ins. Co., 2007

WL 3120268, at *4 (S.D. Ala. Oct. 22, 2007) ("such duplication is for the convenience of counsel and is not taxable"). Therefore, the Court will exclude the cost of the duplicate condensed forms of each transcript. Additionally, the "depo drive" and courier costs will be excluded as ordinary business expenses. "Costs associated with delivering, shipping, or handling transcripts are ordinary business expenses and are not recoverable." Preis, 2007 WL 3120268, at *3 (quoting Kerns v. Pro-Foam, Inc., 2007 WL 2710372 at *3 (S.D. Ala. 2007)). Accordingly, the Court will exclude $158.50 in costs designated as condensed, depo drive and courier costs.

Nationwide also objects to the reporter fees incurred for obtaining portions of the trial transcripts. The cost of trial transcripts may be recovered when such transcripts are necessarily obtained for use in the case. 28 U.S.C. § 1920(2). Whether trial transcription costs may be taxable must be determined "on a case-by-case basis..." Crouch v. Teledyne Cont. Motors, Inc., 2013 WL 203408, *4 (S.D. Ala. Jan. 17, 2013). "[W]hile the cost of daily trial transcripts should not be allowed as a matter of course, a district court may award the cost of daily trial transcript where the length and complexity of a trial make the daily transcripts necessary." Bumpers v. Austal U.S.A., L.L.C, 2015 WL 6870122, at *3 (S.D. Ala. Nov. 6, 2015) (citing Kearney v. Auto–Owners Ins. Co., 2010 WL 1856060, *4 (M.D. Fla. May 10, 2010); Maris Distrib. Co. v. Anheuser–Busch, Inc., 302 F.3d 1207, 1226 (11th Cir. 2002)). "Factors to be considered are the complexity of the issues tried, the length of the trial, and whether the attorneys are required to submit briefs and proposed findings to the court during trial." Goodwall Const. Co. v. Beers Const. Co., 824 F. Supp.

1044, 1064 (N.D. Ga. 1992) (citation omitted).  While some courts have allowed the recovery of trial transcript costs when necessary to prepare for the cross-examination of a technical expert at that trial and when the Court reviewed portions of the transcript in reaching its decision, case law in the Eleventh Circuit suggests that counsel's note taking during trial should normally replace any necessity for a trial transcript obtained during trial for cross-examination preparation. Bumpers at *4 (citations omitted).  Trial briefs were not required to be submitted during the trial of this matter and the Court does not find the trial to have been so complex or lengthy that trial transcripts were necessary.  Accordingly, the Court will exclude $124.20 for the costs of trial transcripts.

### 3. Postage

Lastly, Nationwide objects to NNT's inclusion of postage in its copying expense reimbursement.  The Eleventh Circuit has determined that postage is non-recoverable under 28 U.S.C. § 1920. Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996).   Thus, the Court will exclude $115.90 claimed as postage by NNT.

## CONCLUSION

For the reasons stated above the Court hereby **ORDERS** as follows:

1. The motion of Nationwide Mutual Insurance Company for new trial or, alternatively for remittitur (Doc. 128), is **GRANTED** to the extent that the damage award in this case is reduced to **$318,500.00**.

2. The motion of Nall's Newton Tire to tax costs and prejudgment interest (Doc. 130), is **GRANTED in part** to the extent that Nall's Newton Tire is granted **6% prejudgment interest** from **August 15, 2013,** through the date of judgment and costs are taxed in the amount of **$5,344.67**.  (The motion is DENIED in part to the extent that the prejudgment interest applies only to the reduced damage award and $398.60 is excluded from the claimed costs.) **Nall's Newton Tire is ORDERED to file a proposed Final Judgment consistent with this order, on or before December 11, 2015.**

3. The motion of Nationwide Mutual Insurance Company for reconsideration of order granting Nalls Newton Tire leave to file surreply (Doc. 138), is **DENIED**.

       **DONE** and **ORDERED** this 7th day of December, 2015.

                                /s/  Callie V. S. Granade
                                UNITED STATES DISTRICT JUDGE